1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**
                              **DISTRICT OF NEVADA**
7

8      ALFONSO JACKSON,                    )        3:05-CV-00428-HDM (RAM)
                                           )
9                     Plaintiff,           )
                                           )
10                                         )        **REPORT AND RECOMMENDATION**
              vs.                          )        **OF U.S. MAGISTRATE JUDGE**
11                                         )
       SHERYL FOSTER, et al.,              )
12                                         )
                      Defendants.          )
13     _____)

14            This Report and Recommendation is made to the Honorable Howard D. McKibben,

15     Senior United States District Judge.  The action was referred to the undersigned Magistrate

16     Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

17            Before the court is Defendant Michael Doakes' Motion to Dismiss (Doc. #125). Plaintiff

18     opposed the motion (Docs. #143, 146) and Defendant Doakes replied (Docs. #147, 148). Also

19     before the court is Defendants' Foster, Gutierrez, Hartman, Ferguson, Mumford and

20     Hollingsworth (collectively "Defendants") Motion for Summary Judgment (Doc. #140).

21     Plaintiff opposed the motion and filed a Cross Motion for Summary Judgment (Docs. #148,

22     150, 151), to which Defendants did not reply.

23                                    **BACKGROUND**

24            Plaintiff is a prisoner in Ely State Prison (ESP) in Ely, Nevada in the custody of the

25     Nevada Department of Corrections (NDOC) (Doc. #124).  At the time of the facts giving rise

26     to his complaint, Plaintiff was a prisoner in Southern Desert Correctional Center (SDCC) and

27     High Desert State Prison (HDSP), in Indian Springs, Nevada also in the custody of NDOC

28     (*Id*.).  Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging state officials

violated his Eighth Amendment right against cruel and unusual punishment by failing to protect him from assault by another inmate and failing to provide him with adequate medical care after the assault (Doc. #124).

In Count I, Plaintiff asserts a violation of his Eighth Amendment right against "excessive use of force", ultimately referring to his right against cruel and unusual punishment (*Id.* at 5). Plaintiff alleges, Defendant Doakes, another inmate who was the head inmate boxing coach for the SDCC boxing team, asked Plaintiff if he wanted to train and learn a few moves (*Id.*). While in the ring, Defendant Doakes allegedly stepped on Plaintiff's foot and punched Plaintiff in the face breaking Plaintiff's jaw and knocking Plaintiff through the ropes (*Id.*). Plaintiff asserts Defendant Doakes acted maliciously and sadistically using excessive force for the very purpose of causing harm and recklessly disregarding Plaintiff's health, safety and welfare (*Id.*). Plaintiff contends Defendant Doakes' actions constitute cruel and unusual punishment (*Id.*).

In Count II, Plaintiff asserts a violation of his Eighth Amendment right by Defendants "failure to respond in response to danger", again referring to his right against cruel and unusual punishment (*Id.* at 6). Plaintiff alleges Defendants Anderson and Hollingsworth essentially stood approximately fifteen (15) feet away from the boxing ring witnessing the entire incident, but refusing to come to Plaintiff's aid or respond to the danger (*Id.*). Plaintiff contends Defendants' actions were done maliciously and sadistically for the very purpose of causing Plaintiff harm, which violates his right against cruel and unusual punishment (*Id.*).

In Count III, Plaintiff asserts a violation of his Eighth Amendment right to adequate medical care, essentially asserting Defendants were deliberately indifferent to his serious medical needs (*Id.* at 7). Plaintiff alleges Defendant Mumford failed to provide him with proper medical care by sending him back to his unit when he presented to medical with pain in his jaw and, then, delaying oral surgery for approximately 96 hours after the injury took place (*Id.*). Plaintiff further alleges Defendant Hartman failed to provide him with proper medical care by delaying outside medical care for approximately 92 hours after Plaintiff was

1   assaulted, which caused a serious infection to spread through Plaintiff's body causing

2   irreparable injuries (Doc. #124 at 8).  Finally, Plaintiff alleges Defendant Gutierrez harassed

3   Plaintiff and denied Plaintiff medical attention by accusing Plaintiff of threatening staff and

4   assaulting Defendant Gutierrez and turning the medical staff against Plaintiff by stating

5   Plaintiff is a sex offender (*Id.*).  Plaintiff contends Defendant Gutierrez' actions were done

6   maliciously and sadistically for the very purpose of causing Plaintiff pain and suffering, which

7   violated Plaintiff's right against cruel and unusual punishment (*Id.*).

8   Finally, in Count IV, Plaintiff alleges a violation of his Eighth Amendment right against

9   "reckless endangerment", referring to his right to be free from cruel and unusual punishment

10  (*Id.* at 9).  Plaintiff asserts Defendants Ferguson and Foster violated his rights by allowing

11  an inmate, who is a former boxing heavy weight champion, to be employed as the head boxing

12  coach of the SDCC boxing team and to ultimately train and spar with fellow inmates

13  unsupervised or with minimal supervision (*Id.*).  Plaintiff contends Defendants Ferguson and

14  Foster knew or should have known that Defendant Doakes was sparring with inmates and,

15  therefore, failed to protect inmates from harm, which resulted in Plaintiff's injuries and caused

16  the alleged damages (*Id.* at 9-10).

17  Plaintiff requests the following relief: compensatory damages; punitive damages; and

18  costs, fees and expenses (*Id.* at 13).

19  **DEFENDANT DOAKES' MOTION TO DISMISS**

20  **I.**   **STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)**

21  "A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law."

22  *North Star Inter'l v. Ariz. Corp. Comm.*, 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted).

23  In considering a motion to dismiss for failure to state a claim upon which relief may be

24  granted, all material allegations in the complaint are accepted as true and are to be construed

25  in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

26  337-338 (9th Cir. 1996) (citation omitted).  For a defendant-movant to succeed, it must appear

27  to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be

28

3

1   proven under the allegations of the complaint. *Id.* at 338.  A complaint may be dismissed as

2   a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a

3   cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan*, 88 F.3d 780, 783 (9th

4   Cir. 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.

5   1984)).  Although allegations of a pro se complaint are held to less stringent standards than

6   formal pleadings drafted by lawyer, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping

7   conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

8   **II.    DISCUSSION**

9          Defendant Doakes moves for dismissal of Plaintiff's claims against him asserting the

10  following arguments: Plaintiff's complaint fails to state a valid cause of action showing he was

11  acting under color of state law because a prison job does not make a prisoner an employee

12  of the state or a state actor; Plaintiff's complaint fails to show a joint plan between Defendant

13  Doakes and the State to deprive Plaintiff of any constitutional rights; damage claims based

14  on mental and/or emotional pain are not cognizable under § 1983; and a private party has no

15  official capacity even if found to be acting under color of state law (Doc. #125).

16         Plaintiff first argues Defendant Doakes' motion is moot because Plaintiff filed a Fourth

17  Amended Complaint on September 28, 2007 and Defendant Doakes' motion relates to the

18  Third Amended Complaint (Doc.#143 at 5).  Plaintiff further argues Defendant Doakes'

19  motion is procedurally deficient because he did not file points and authorities to support his

20  motion; Defendant Doakes, as Head Inmate Coach of the SDCC boxing team, acted in joint

21  activity with state officials and acted under color of state law; Defendant Doakes acted jointly

22  with state officials in depriving Plaintiff of his Eighth Amendment rights;  Defendant Doakes

23  had a sufficiently culpable state of mind acting with deliberate indifference for the very

24  purpose of causing harm to Plaintiff; and courts recognize mental pain can be as real and

25  serious as physical pain (Doc. #143). Plaintiff agrees "all claims seeking assignment of liability

26  based on official capacity should be dismissed (*Id.* at 13).

27

28                                              4

Defendant Doakes responds that he did not receive the Fourth Amended Complaint and it's Plaintiff's responsibility to perfect service; however, it appears from Plaintiff's opposition that the Fourth Amended Complaint suffers from the same deficiencies as the Third Amended Complaint (Doc. #147 at 2). Defendant Doakes further responds that Plaintiff's "specious argument" that he must file a separate "memorandum of points and authorities" shows Plaintiff does not know the historical roots of motion litigation and any of Plaintiff's alleged "facts" outside the four corners of the complaint must be stricken because the instant motion does not introduce anything outside the complaint (*Id.* at 2-3). Defendant Doakes also responds that Plaintiff's claim for emotional and mental pain and suffering is frivolous as a matter of law and Plaintiff is liable under Rule 11 for failing to strike said claim (*Id.* at 3). Finally, Defendant Doakes responds that he is not required to cite to case law, as "[t]here is no magic case law....[and] [t]he principles which form the basis for the motion are clear and that is all that is necessary" and the motion lacks evidentiary support because it does not include anything outside the four corners of the complaint (*Id.* at 4). Defendant Doakes reiterates his arguments made in his motion regarding joint activity and a prison job (*Id.* at 5-6).

### A. Mootness

Plaintiff argues the instant motion is moot because it relates to the Third Amended Complaint and not the Fourth Amended Complaint (Doc. #146 at 5). Although the record shows Defendant Doakes filed the instant motion on October 15, 2007 (Doc. #125), after Plaintiff filed his Fourth Amended Complaint on September 28, 2007 (Doc. #124), Defendant Doakes asserts he did not receive Plaintiff's Fourth Amended Complaint at the time he filed the instant motion and does not dispute the instant motion relates to the Third Amended Complaint (Doc. #147 at 1-2).

Once filed, the Fourth Amended Complaint supersedes the Third Amended Complaint, the latter being treated as non-existent. *See Loux v. Rhay*, 375 F.2d 55 (9th Cir. 1967). Thus,

1    Defendant Doakes' motion addressing the Third Amended Complaint became moot once the

2    Fourth Amended Complaint was filed.  Accordingly, the motion should be **DENIED as moot.**

3           **B.    *Sua Sponte* Dismissal under § 1915 and Rule 12(b)(6) (Count I)**

4           Although Defendant Doakes' motion is moot, the court can, nevertheless, *sua sponte*

5    dismiss the claims against him where Plaintiff has brought his complaint pro se, *in forma*

6    *pauperis*, and has failed to state a claim upon which relief can be granted. The Prison

7    Litigation Reform Act  (PLRA) establishes special rules governing proceedings by prisoners

8    in forma pauperis.  In particular, it provides, "the court shall dismiss the case at any time if

9    the court determines that ... (B) the action ... fails to state a claim on which relief may be

10   granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  Furthermore, the Ninth Circuit holds that the federal

11   courts may, in fact, dismiss claims *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(6) when it is

12   clear that the plaintiff has not stated a claim upon which relief may be granted. *See Omar v.*

13   *Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim

14   sua sponte under Fed.R.Civ.P. 12(b)(6).... Such a dismissal may be made without notice where

15   the claimant cannot possibly win relief.").

16          Here, Plaintiff has amended his complaint four (4) times and has failed to allege

17   sufficient facts to state a valid § 1983 claim against Defendant Doakes.  First and foremost,

18   to state a claim against Defendant Doakes under 42 U.S.C. § 1983, Plaintiff must allege two

19   elements: 1) that a right secured by the Constitution or laws of the United States was violated

20   and 2) that the alleged violation was committed by a person acting "under color of state law."

21   *West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiff's failure to meet either one or both of these

22   elements is fatal to his § 1983 action against Defendant Doakes.

23                  1.    Prisoner Acting Under Color of State Law in Prison Job

24          Plaintiff essentially argues Defendant Doakes, a prisoner, was acting under color of

25   state law because the state, through it's officials, hired Defendant Doakes as its employee as

26   the Head Coach of the SDCC boxing team (Doc. #124).  Plaintiff cites to no authority to

27   support the proposition that a prisoner, in a prison job, is a state actor or acts under color of

28                                              6

1  state law for purposes of § 1983.  For the foregoing reasons, Plaintiff's claims against

2  Defendant Doakes fail on the second of the *Atkins* elements because, at best, Defendant

3  Doakes would be a private individual who does not act "under color of state law."

4        A person acts under color of state law if he "exercise[s] power possessed by virtue of

5  state law and made possible only because the wrongdoer is clothed with the authority of state

6  law." *Atkins*, 487 U.S. at 49.  A private individual does not act under color of state law. *See*

7  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "Individuals ... have no right to be free from the

8  infliction of harm by private actors." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th

9  Cir. 1996) (citing *DeShaney v. Winnebago Cy. Dep't of Social Serv.*, 489 U.S. 189, 196 (1989))

10  (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure

11  that the State protected them from each other").

12        Plaintiff has failed to show Defendant Doakes was acting under color of state law.

13  Under NEV. REV. STAT. § 209.461, all inmates are required to work or receive training for 40

14  hours each week; thus, Defendant Doakes' prison job, in and of itself, does not clothe him with

15  authority under state law, as it is required of all inmates and the State certainly does not confer

16  the authority of state law on all inmates. *See Hale v. State of Arizona*, 993 F.2d 1387, 1393

17  (9th Cir. 1993) (prisoners, working for a prison in a program structured by the prison pursuant

18  to state law requiring prisoners to work at hard labor are not "employees" of the prison within

19  the meaning of the FLSA).  Thus, under these facts, Defendant Doakes was acting as a private

20  individual.

21        2.    Joint Activity with State

22        It is well settled that a private party may be held liable under § 1983 if "he is a willful

23  participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27

24  (1980); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152; *United States v. Price*, 383

25  U.S. 787, 794 (1966); *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983).  Private parties

26  involved in such a conspiracy may be liable under § 1983. *Adickes*, 398 U.S. at 152.  To prove

27  such a conspiracy (or joint action) between the state and private parties under § 1983, Plaintiff

28

must show an agreement or meeting of the minds between state officials and the private party to violate his constitutional rights. *Fonda*, 707 F.2d at 438; *see also Adickes*, 398 U.S. at 158. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Fonda*, 707 F.2d at 438.

Plaintiff has failed to plead a conspiracy on the part of Defendant Doakes and state officials. Plaintiff alleges Defendant Doakes, who was hired by state officials as the head inmate boxing coach, used excessive force against him while sparring and essentially assaulted him (*Id*. at 5). Plaintiff further alleges Defendants Hollingsworth and Anderson were standing about fifteen (15) feet away from the boxing ring and did nothing to prevent or stop Defendant Doakes' alleged assault (Doc. #124 at 4). Plaintiff further alleges Defendant Ferguson hired Defendant Doakes as a boxing coach, knowing Defendant Doakes is a pro fighter and heavyweight champion in boxing, and said hiring constitutes the joint activity with state officials and the officers' failure to respond to the assault on Plaintiff was malicious and sadistic for the very purpose of causing harm (*Id*. at 9).

Construing all Plaintiff's allegations as true, he has failed to show any agreement or meeting of the minds between the state officials and Defendant Doakes to violate his constitutional rights. At best, he has shown Defendant Doakes assaulted him and Defendants may have failed to protect him from the assault or acted deliberately indifferent towards his safety during and after the assault. He has not, however, pled any facts sufficient to show Defendant Doakes conspired with state officials to assault him or that state officials knew prior to the assault that Defendant Doakes would assault him. Thus, Defendant Doakes' actions are purely private conduct and such conduct, no matter how wrongful, is not covered under § 1983. *Van Ort*, 92 F.3d at 835. Accordingly, Plaintiff's complaint against Defendant Doakes (Count I) should be **<u>DISMISSED</u>**.

///

///

8

1

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

2

**I.    STANDARD FOR SUMMARY JUDGMENT**

3      The purpose of summary judgment is to avoid unnecessary trials when there is no

4   dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

5   18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where,

6   viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there

7   are no genuine issues of material fact in dispute and the moving party is entitled to judgment

8   as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

9   Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis

10  for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable

11  minds could differ on the material facts at issue, however, summary judgment is not

12  appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516

13  U.S. 1171 (1996).

14     The moving party bears the burden of informing the court of the basis for its motion,

15  together with evidence demonstrating the absence of any genuine issue of material fact.

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

17  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,

18  but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty*

19  *Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an

20  inadmissible form, only evidence which might be admissible at trial may be considered by a

21  trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v.*

22  *Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

23     In evaluating the appropriateness of summary judgment, three steps are necessary:

24  (1) determining whether a fact is material; (2) determining whether there is a genuine issue

25  for the trier of fact, as determined by the documents submitted to the court; and (3)

26  considering that evidence in light of the appropriate standard of proof. *Liberty Lobby*, 477

27  U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the

28

9

1 suit under the governing law will properly preclude the entry of summary judgment; factual

2 disputes which are irrelevant or unnecessary will not be considered. *Id.*  Where there is a

3 complete failure of proof concerning an essential element of the nonmoving party's case, all

4 other facts are rendered immaterial, and the moving party is entitled to judgment as a matter

5 of law. *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut,

6 but an integral part of the federal rules as a whole. *Id.*

7 **II.   DISCUSSION**

8      Defendants request summary judgment on each of Plaintiff's claims asserting the

9 following arguments: 1) the establishment of the boxing program did not constitute deliberate

10 indifference to Plaintiff's health or safety; 2) allowing Defendant Doakes to serve as the team

11 boxing coach did not constitute cruel and unusual punishment; 3) the alleged inadequate

12 supervision of the boxing ring at the time in question did not constitute cruel and unusual

13 punishment; 4) the medical care Plaintiff received relating to the injuries at issue did not

14 amount to cruel and unusual punishment; and 5) Plaintiff's allegations that Defendant

15 Gutierrez harassed him do not amount to cruel and unusual punishment (Doc. #140).

16 Defendants further assert they are entitled to qualified immunity on each of Plaintiff's claims

17 (*Id.* at 20-23).

18      Plaintiff argues the establishment of the boxing program constituted deliberate

19 indifference to Plaintiff's health and safety because a former heavyweight champion of the

20 world, Defendant Doakes, was permitted to train and spar with inmates unsupervised or

21 without adequate supervision, which caused Plaintiff to be assaulted by Defendant Doakes

22 resulting in the chain of medical events that left Plaintiff with irreparable injuries (Doc. #148

23 at 23). Plaintiff further argues Defendants Foster and Ferguson were deliberately indifferent

24 to Plaintiff's health and safety by failing to supervise the boxing program and failing to enforce

25 the boxing program rules (*Id.* at 23-24).  According to Plaintiff, Defendants Foster and

26 Ferguson's inadequate administration and supervision of the boxing program amounts to cruel

27 and unusual punishment if an inmate is assaulted (*Id.* at 25).  Plaintiff also argues allowing

28                                      10

Defendant Doakes to serve as the boxing team head coach constitutes cruel and unusual punishment because official's knew he had been sparring for years before the incident in question took place on July 3, 2004 (Doc. #148 at 27).  Plaintiff further argues Defendants Hollingsworth and Anderson, allegedly the only two officials present during the incident, were deliberately indifferent to Plaintiff's health and safety because they failed to protect Plaintiff and only stood and watched as the assault took place (*Id*. at 29).  With regards to the medical care received following the incident, Plaintiff argues Defendants were deliberately indifferent to his serious medical needs by delaying treatment for approximately 96 hours (*Id*. at 31). Plaintiff further argues Defendant Gutierrez denied his medication and harassed him while he was recovering from his injuries, which amounted to cruel and unusual punishment (*Id*. at 34).  Finally, Plaintiff argues Defendants are not entitled to qualified immunity (*Id*. at 35).

Defendants failed to reply to Plaintiff's arguments.

### A.    Eighth Amendment - Health and Safety (Count IV and II)

The Eighth Amendment right imposes a duty on prison officials to take reasonable steps to protect an inmate's safety. *Hoptowit*, 682 F.2d at 1250-1251.  To establish a violation of this duty, Plaintiff must establish that prison officials were "deliberately indifferent" to serious threats to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To demonstrate that a prison official was deliberately indifferent to a serious threat to his safety, Plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." *Id*. at 837; *see also County of Washoe*, 290 F.3d 1175, 1187-1188 (9th Cir. 2002).  The obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842.  However, every injury suffered by one prisoner at the hands of another does not translate into constitutional liability for prison officials responsible for the victim's safety. *Farmer*, 511 U.S. at 834.

A prison official violates the Eighth Amendment only when two requirements are met: a sufficiently serious deprivation and an act or omission that results in the denial of the

11

1    "minimal civilized measure of life's necessities. *Farmer*, 511 U.S. at 834. For a claim based

2    on failure to protect or failure to prevent harm, the inmate must show the he is incarcerated

3    under conditions posing a *substantial risk or serious harm. Id.*

4          Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

5    (9th Cir. 2004). A prison official acts with "deliberate indifference" only if the official knows

6    of and disregards an excessive risk to inmate health and safety. *Id.* at 1957. Under *Farmer*,

7    the Supreme Court found "it would have been clear to a reasonable prison official that if he

8    knew about an excessive risk to inmate safety, and inferred from the facts of which he was

9    aware that a substantial risk of serious harm exists, he would violate the law by disregarding

10   that risk." *Id.* Prison officials may avoid liability by presenting evidence that they lacked

11   knowledge of the risk or reasonably responded, albeit unsuccessfully, to the risk. *Farmer*, 511

12   U.S. at 844.

13                    1.    Count IV

14         In Count IV, Plaintiff essentially alleges that Defendants Ferguson and Foster violated

15   his Eighth Amendment rights by establishing the boxing program at SDCC and allowing

16   another inmate, Defendant Doakes, who was a former heavyweight boxing champion, to spar

17   and train inmates with inadequate or no supervision (Doc. #124 at 9). The record shows,

18   however, that Defendants presented evidence that they lacked knowledge of an excessive risk

19   to Plaintiff's health and safety and Plaintiff has failed to show Defendants knew of the risk

20   *and* inferred that substantial harm might result from the risk. "The deliberate indifference

21   standard requires a finding of some degree of individual culpability, but does not require an

22   express intent to punish. The standard does not require that the guard or official believe to

23   a moral certainty that one inmate intends to attack another at a given place at a time certain

24   before that officer is obligated to take steps to prevent such an assault. But, on the other hand,

25   he must have more than a mere suspicion that an attack will occur." *Redman v. County of San*

26   *Diego*, 896 F.2d 362, 366-367 (9th Cir. 1990).

27

28                                              12

1    Under these facts, it appears Defendants had *no suspicion*, let alone a mere suspicion,

2    that Defendant Doakes would attack Plaintiff in the boxing ring or elsewhere.  Where there

3    is no prior warning of danger, prison officials will not be held liable for failing to prevent

4    injuries suffered as a result of a surprise attack. *See Prosser v. Ross*, 70 F.3d 1005 (8th Cir.

5    1995).  There is no evidence in the record that there was any history between Plaintiff and

6    Defendant Doakes.  There is no evidence in the record that Defendants were aware Defendant

7    Doakes assaulted any other inmates in the boxing ring at any other period of time.  In fact,

8    there is no evidence in the record that Defendant Doakes had any prior write-ups pertaining

9    to boxing or his job as the head coach of the boxing team and Plaintiff admits Defendant

10    Doakes held this position for at least a year.

11    Construing the facts most favorably to Plaintiff, even his own evidence suggests that

12    Defendants *and* Plaintiff were unaware of any excessive risk to Plaintiff's health and safety

13    and were aware that Defendant Doakes had been training, coaching and sparring with inmates

14    for years apparently without incident (Doc. #148 at 5).  Thus, there is nothing in the record

15    to suggest Defendants knew of or should have known of an excessive risk to Plaintiff's health

16    and safety, much less any evidence to show Defendants disregarded any such risk.  To the

17    contrary, the evidence suggests that Plaintiff wasn't even aware, prior to the incident, that any

18    such risk was present or he would not likely have *voluntarily* stepped into the ring with a

19    former heavy weight boxing champion.  Plaintiff's own unawareness supports the inference

20    that Defendants were also unaware of an excessive risk to Plaintiff's health and safety.

21    The facts indicate Plaintiff hit Defendant Doakes in the face while sparring, which

22    prompted a reaction from Defendant Doakes that turned out to be an unfortunate and

23    obvious overreaction (given Defendant Doakes' professional experience as a boxer) that caused

24    Plaintiff to suffer injuries.  Such an incident does not suddenly render the entire boxing

25    program or Defendant Doakes' position as head boxing coach violative of the Eighth

26    Amendment, even if hindsight evidences that the program may have needed more

27

28                                                      13

supervision.[1]  Thus, even viewing the facts in the light most favorable to him, Plaintiff has failed to show Defendants violated his constitutional rights by deliberately disregarding a *substantial risk of serious harm* to his health and safety.  Accordingly, Defendants' request for summary judgment on Count IV, dealing with Defendants Ferguson and Foster's creation and administration of the boxing program and the position of head boxing coach, should be **GRANTED**.  Plaintiff's request for summary judgment on Count IV should be **DENIED**.

### 2.    Count II

In Count II, Plaintiff alleges Defendants Anderson and Hollingsworth essentially witnessed Defendant Doakes' assault on Plaintiff and "failed to respond in response to danger" before, during and after the assault, and Defendants maliciously and sadistically allowed Defendant Doakes to hit Plaintiff (Doc. #148 at 29).  Plaintiff further alleges Defendants Anderson and Hollingsworth were provided with advanced warning that Plaintiff needed protection from Defendant Doakes because they heard Defendant Doakes yell, "I told you not to hit me in the face ..." (*Id.* at 30).

Defendants dispute failing to respond to any danger and assert Defendant Hollingsworth approached both Plaintiff and Defendant Doakes following the incident and both indicated they were not injured (Doc. #140 at 16).  Defendants further assert Plaintiff asked if he could get back in the ring with Defendant Doakes (*Id.*).

Defendants Hollingsworth and Anderson do not dispute being approximately fifteen (15) feet away from the incident and Defendant Hollingsworth asserts he approached Plaintiff and Defendant Doakes after the incident and both indicated they were not injured (Doc. #140 at 16).  Plaintiff disputes this assertion and alleges Defendants Hollingsworth and Anderson never even stepped inside the gated fence where the boxing ring was located, but, instead, stood outside the fence watching the entire incident (Doc. #124 at 6).  Plaintiff contends

---

[1] The court notes that liability under § 1983 for failing to protect a prisoner from other inmates cannot be based on negligence on the part of prison officials. *Davidson v. Cannon*, 474 U.S. 344 (1986).

14

1  Defendants stood there watching, intentionally not coming to his aid, for the very purpose
2  of causing him harm (*Id.*).

3  Viewing the facts in the light most favorable to him, Plaintiff has failed to show
4  Defendants Hollingsworth and Anderson acted with deliberate indifference towards his health
5  and safety.  The record shows Defendants were outside the location of the boxing ring and the
6  assault on Plaintiff was a surprise attack that occurred without warning and lasted only a
7  matter of seconds – long enough for Defendant Doakes to punch Plaintiff through the ring.
8  And, as previously stated, it appears no Defendants had any suspicion that Defendant Doakes
9  would attack Plaintiff and Plaintiff has failed to show Defendants Hollingsworth and Anderson
10  had culpable states of mind to constitute deliberate indifference to Plaintiff's health and safety.
11  Even if Defendants Hollingsworth and Anderson were negligent or mistaken in their
12  assessment of Plaintiff's condition after the assault, such negligence does not constitute
13  deliberate indifference.  Accordingly, Defendants' request for summary judgment on Count
14  II, dealing with Defendants Hollingsworth and Anderson's alleged failure to protect and/or
15  respond should be **<u>GRANTED</u>**.  Plaintiff's request for summary judgment on Count II should
16  be **<u>DENIED</u>**.

17  ### B.   <u>Eighth Amendment - Medical Care (Count III)</u>

18  The government has an obligation under the Eighth Amendment to provide medical
19  care for those whom it punishes by incarceration. *See Hutchinson v. United States*, 838 F.2d
20  390, 394 (9th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). "But not every breach
21  of that duty is of constitutional proportions. In order to violate the Eighth Amendment
22  proscription against cruel and unusual punishment, there must be a 'deliberate indifference
23  to serious medical needs of prisoners.'" *Id.* (quoting *Estelle*, 429 U.S. at 104).  Thus, as an
24  initial matter, Plaintiff must show his medical needs were serious.  Serious medical needs
25  include "[t]he existence of an injury that a reasonable doctor or patient would find important
26  and worthy of comment or treatment; the presence of a medical condition that significantly
27  affects an individual's daily activities; or the existence of chronic and substantial pain."

28

15

*McGuckin v. Smith*, 974 F.2d 1050, 1059-1060 (9th Cir. 1992); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).  If Plaintiff's needs were serious, then he must show Defendants acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 104.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment.'" *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir.1992) (quoting *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir.1989).  However, a delay in providing treatment, standing alone, does not constitute an Eighth Amendment violation. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).  For a claim of deliberate indifference to lie a prisoner must also show the denial was substantially harmful. *Estelle*, 429 U.S. at 106.  In other words, a prisoner must show the delay led to further injury. *Shapley*, 766 F.2d at 407.

In Count III, Plaintiff alleges Defendant Mumford failed to provide him with medical treatment for his fractured and infected jaw for over 96 hours, which caused irreparable injuries (Doc. #124 at 7).  Plaintiff further alleges Defendant Hartman failed to provide him with medical treatment for his injuries by delaying sending Plaintiff to an outside medical provider for 92 hours after Plaintiff was assaulted, which caused a serious infection to spread throughout his body and caused irreparable injuries to his jaw bone, chronic pain and headaches (*Id*. at 8).  Finally, Plaintiff alleges Defendant Gutierrez harassed and threatened him, denied him medical attention, and turned the nursing staff against him by stating Plaintiff is a sex offender and deserves everything coming to him (*Id*.).

Defendants assert Plaintiff does not claim they failed to treat him; but, rather that their treatment of Plaintiff was inadequate because they waited too long to send Plaintiff to an oral surgeon (Doc. #140 at 18). Defendants detail Plaintiff's medical records contending they show the following: Plaintiff was examined by medical personnel at SDCC on the date of the incident, July 3, 2004; the medical staff were unable to determine if Plaintiff's jaw had been fractured so they ordered X-rays and put Plaintiff on pain medication; on July 4, 2004, the medical staff contacted Defendant Mumford to inform him of Plaintiff's condition and he

ordered Plaintiff transferred to the HDSP infirmary; upon arrival, the medical staff at HDSP examined Plaintiff and contacted the on-call provider; Plaintiff was put on medication and orders were given to send Plaintiff to an outside provider as soon as possible; Plaintiff was on pain medication until July 7, 2004 when he was taken to an oral surgeon and treated; Plaintiff was returned the same day and placed on intravenous medications, including morphine; the medical staff continued to care for Plaintiff; on August 15, 2004, medical staff noted Plaintiff had removed two wires from his jaw and ordered he be seen by a provider the next day; on August 24, 2005, Plaintiff was sent to an oral surgeon and had the remaining wires removed; Defendant Mumford examined Plaintiff on August 30, 2004 and deemed him suitable for discharge; Plaintiff was discharged on September 1, 2004 (*Id.*).  The court notes Defendants did not provide the court with Plaintiff's medical records; but, rather summarized the contents of said records using the Affidavit of Karen Walsh attached as Exhibit H.

Plaintiff responds to Defendants' account of the medical care he allegedly received and argues the following: he was not examined by medical personnel at SDCC on the date of the incident, as the SDCC nurse merely called Dr. Mumford to inform him that Plaintiff's jaw was in a lot of pain and Dr. Mumford informed the nurse that if Plaintiff can still talk to send him back to his unit; he was sent back to his unit with an ice pack, some crushed ibuprofen and an appointment slip for 10:00 a.m. the following morning; at approximately 7:00 p.m. that evening he pushed his emergency call button on his cell door to inform the officer that the ice pack had melted and the ibuprofen wasn't working and the officer told him he had already been seen by medical and the officer refused to call medical again; the following day the SDCC nurse saw Plaintiff at approximately 9:45 a.m. and immediately knew Plaintiff's jaw was fractured and called Sergeant Pierce to inform him that Plaintiff had to be moved to HDSP infirmary to monitor his pain medication; that same day Dr. Mumford determined Plaintiff should be transferred to HDSP; at HSDP Defendant Hartman left Plaintiff to sit in bed with a broken and infected jaw from July 4, 2004 until July 7, 2004; on July 6, 2004, Plaintiff was taken to the dental department for x-rays and had to be escorted in a wheel chair because he

was in so much pain and was unable to walk; while at HDSP he was only given regular pain medication; on July 7, 2004, Plaintiff was taken to an outside medical provider who removed part of Plaintiff's jaw and one of Plaintiff's wisdom teeth, which Plaintiff asserts had to be done because the delay in seeking outside treatment caused an infection that deteriorated the bone and three wisdom teeth; upon arrival back to HDSP after surgery Plaintiff was put on antibiotics and morphine for the pain for almost two (2) weeks; Plaintiff was in a lot of pain and his body would jerk whenever he tried to swallow; to date, Plaintiff still has to take medication for his pain and nerve damage to his face; finally, during his stay at HDSP, Defendant Gutierrez harassed Plaintiff on a daily basis and informed the medical staff that Plaintiff assaulted him and threatened staff and Defendant Gutierrez denied Plaintiff his medication (Doc. #148 at 6-7; Doc. #124 at 7-8).

Plaintiff has sufficiently shown his injuries were serious where he had a fractured jaw that required oral surgery removing part of his jaw and a tooth. Thus, the question is whether the medical treatment Plaintiff received, viewing the facts in a light most favorable to him, show deliberate indifference.

The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because "[t]he State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). However, a claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Although prison authorities have "wide discretion" in the medical treatment afforded prisoners, delay in providing surgery in which the delay proved harmful may state a claim. *Shaply v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404 (9th Cir. 1989). In deciding whether there has been deliberate indifference to Plaintiff's serious medical needs, the court need not defer to the judgment of prison doctors or administrators. *Wood v. Sunn*, 852 F.2d 1205, 1211 (9th Cir. 1988).

Under these facts, Plaintiff has failed to show Defendants acted with deliberate indifference towards his serious medical needs. First and foremost, Plaintiff has failed to show a 96-hour delay in surgery for a fractured jaw, notably during the Fourth of July holiday, was unreasonable. Although Defendant Mumford, or other medical staff, allegedly did not examine Plaintiff on the first day he presented to medical, Plaintiff admits he was seen the very next morning and the nurse and Defendant Mumford determined Plaintiff needed to be transferred to the HDSP infirmary to monitor his pain medication that same day. Two (2) days later Plaintiff was taken for X-rays and was given pain medication while awaiting his transfer to an oral surgeon. Then, the very next day, he was taken to the oral surgeon who performed the required surgery. Plaintiff claims the 3-day delay caused the infection that required removing part of his jaw and a wisdom tooth; however, Plaintiff has provided no evidence that a 3-day delay between the diagnosis of such an injury and the performance of surgery is unreasonable or that his injury, itself, did not cause Plaintiff to lose part of his jaw and a wisdom tooth. Then, Plaintiff admits receiving antibiotics and morphine for approximately two (2) weeks after his surgery. Thus, even viewing the facts in the light most favorable to Plaintiff, the record indicates Defendants were, at most, negligent in initially sending Plaintiff back to his unit; but, then properly responded to Plaintiff's medical needs thereafter.

As to the alleged harassing conduct of Defendant Gutierrez, verbal harassment or abuse is insufficient to state a constitutional deprivation under § 1983. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir. 1987). Threats do not even rise to the level of a constitutional violation. *Gaut v. Sunn,* 810 F.2d 923, 925 (9th Cir. 1987). And Plaintiff's allegation that Defendant Gutierrez denied him medication is contradicted by his own assertion that he received antibiotics and morphine for two (2) weeks following surgery. Thus, Plaintiff has failed to show Defendant Gutierrez was deliberately indifferent to his serious medical needs.

For the forgoing reasons, Plaintiff has failed to show Defendants acted with deliberate indifference towards his serious medical needs. Accordingly, Defendants' request for

19

summary judgment on Count III, dealing with inadequate medical care, should be **GRANTED**.  Plaintiff's request for summary judgment on Count III should be **DENIED**.

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING as moot** Defendant Doakes' Motion to Dismiss (Doc. #125).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DISMISSING** Defendant Doakes and Count I of Plaintiff's Fourth Amended Complaint (Doc. #124).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (Doc. #140).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Cross Motion for Summary Judgment (Docs. #148, 150, 151).

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:   July 25, 2008.

_____
UNITED STATES MAGISTRATE JUDGE